Our last case for argument is 23-1511 Hebert v. Allied Rubber & Gasket. Counsel, how do I say your name? Worson. Excuse me, Worson. Mr. Worson. Good morning, Your Honors. Matt Worson for Leland-Hebert. There are two independent reasons that this court should reverse the District Court's grant of summary judgment. The first relates to deliberate marking of the accused device. The second relates to the infringement analysis of the District Court, which raises a number of issues which Hebert needs to prevail on all of those for that to be a basis for reversal. Deliberate marking by the defendant? Yes. So the defendant here, Allied, marked the accused wrench with its pattern. Who was it that was the primary sponsor of that marking? It was the defendant, Allied, Your Honor. That was it. My understanding is that Mr. Hebert was involved in that. Well, the record evidence shows, Your Honor, that first of all, at page 387 of the joint appendix, you'll find the defendant's CEO, James Stoddard, emailing designs of the accused device to a manufacturer in China. Those drawings of the wrench have the patent marking on them. But who did he rely on to believe that the product should be marked with the patent? It was Mr. Hebert, right? Could you repeat that, Your Honor? I'm not saying that it was Mr. Hebert who was the person who said it should be marked with the patent. Yeah, that is a misunderstanding. And I would cite 387 as evidence that it was the defendant's CEO that sent the email. But also, an independent ground would be a contract that Hebert and Allied entered into, a distribution agreement. That's at 442 of the joint appendix. In that, ARDCO or Allied gained a contractual right to mark the wrenches. So those two pieces of evidence together establish a deliberate marking of the wrench by the defendant. And let's remember where we are procedurally. This is a grant of summary judgment. This evidence we submit is enough to get to trial on that issue. It should have been construed in plaintiff's favor, and it was not. And we believe that is error, and it should be reversed. What we feel is that, well, we believe that we fit within this court's FROLO decision, which raised essentially identical facts. Let me just ask how far you think this marking argument goes, because it's a little confusing to me. If somebody marked their product with a patent number, but it's crystal clear to pretty much everybody in the room, and I'm not saying that's this case, that the device that's being marked is actually missing one of the elements of the patent, you wouldn't say, would you, that that evidence should prevent summary judgment? I would say that in that hypothetical, no, it would not. In our case, we're asserting that it's circumstantial evidence going towards infringement. So which, I guess I understood the district court defining non-infringement because it concluded that there were multiple claim limitations that weren't present in the accused device. Is that fair? Yes. So why would the evidence of marking change that? That's what I don't understand. Well, and we can get into the infringement analysis, Your Honor, and I'm happy to do that now, but it's not... That sounds more like a mismarking question rather than an infringement question. Correct. We do not believe so, Your Honor. This is a deliberate marking, much like the Frollo case, where it stands as an admission by Allied that this wrench is covered by the patent that it's marking. But that doesn't override the facts, does it? No. So it is not case over, we automatically win because they marked the wrench. We're not saying that. It's circumstantial evidence of... Why is that? Let's assume for a second the judge got it right. I don't know who the judge was, but if the judge got it right, that they were missing several elements, as the chief said, and then that vitiates the marking. I don't understand why the marking would have any relevance. The product is the product. And would a technology expert come in and say, well, it's missing these four things, but there might be infringement because they put a marking on it and said it was covered. I would not even permit that to be put into evidence, I don't think. If I may, could I get into the infringement analysis and maybe that'll clarify this issue? Well, all I care about is why would it matter what is on the label? It bothers me about who I think put it on the label, but setting that aside, why would it matter if we agree with the court that the elements were missing? What difference does the label make? Well, I think two things. It's a material issue because the infringement case is material. This is, let's call it a close case. We believe that there are errors running throughout the infringement analysis. So it's not, I believe the chief judge's hypothetical was where there's just a missing element. But we don't have that here. We have a wrench that these parties worked together to manufacture and sell, and the defendant marked it with the patent number. And is now, the defendant is now saying that they don't infringe on that same wrench. So if I could get into the infringement analysis, in a little background, when we filed this case in the Southern District of California, the case was assigned to Chief Judge Sabra, who conducted claim construction proceedings. And specifically on the term shaft, rejected defendant's proposed construction of shaft, meaning narrowly a bar or a rod. Instead, the chief judge adopted Mr. Hebert's construction, which was ordinary meaning. Now, fast forward to the summer judgment proceeding, defendant re-litigated this very same issue and argued that shaft means bar or rod. And defendant prevailed on this very issue. And the district court, now Judge Oda presiding, held that shaft means bar or rod. And didn't Hebert agree with that in his deposition? He did not clearly agree. But under the Markman decision of this court... The fact that the court says plain ordinary mean doesn't exclude it from including that a shaft is a bar or rod, right? Your Honor, but that's not what the court held. It held that it has to be a bar or rod. And it's not ordinary meaning. And defendant's dictionary definition in the record would be broad enough. One of their definitions is a passageway or duct. And that's exactly what Hebert is arguing, is that the shaft is, for example, with the recessed wrench, it's the smooth hollow center in the actuator wheel. And so what we have here on this issue is Hebert won at claim construction, developed his evidence, submitted an expert report, and put in his expert report on this construction, hollow center actuator wheel. And Judge Oda then rejected this evidence and instead applied the claim construction narrowly to hold that it has to be a bar or a rod. We believe that's error and this court should reverse. Why couldn't she find that that was what the plain ordinary meaning was? That's not what she held, Your Honor. She held it's a bar or a rod. She went back to what defendant's position. Why couldn't she hold consistently with the construction of plain ordinary meaning that the plain ordinary meaning would require it to be that? What prevents her from doing that? I don't think anything would prevent her from saying that taking up this case to this judge, plain and ordinary meeting is bar or rod. That's not what was done here, though. That's not what we're appealing. We're appealing a relitigation of the claim construction order to mean that a shaft has to be a bar or a rod. And that is not how Hebert understood the term post-claim construction when he developed his evidence and submitted to the court on summary judgment. Moving on to another non-infringement issue, there's a limitation in the claims threaded interior wall. At the claim construction hearing in the order, the court held that threaded has a helical component. And Mr. Hebert in his expert report submits at 310, 328, and 331 of the joint appendix evidence, photographic evidence to show that we have this threaded interior wall, we have helical. That was submitted at summary judgment by plaintiff Hebert, and it was rejected by the district court. Instead, the district court adopted Allied's position, which was not an expert report, but rather it was attorney argument that those threads were parallel rather than helical. While you have time, if you could quickly address the issue of your disagreement with what the court said with respect to the recessed wrench. Could you repeat the last part? The recessed wrench. I assume you disagree with the court's determination of non-infringement with respect to that. With respect to whether there was a threaded collar or not. Okay. Okay. She found there was no threaded collar. So if you want to address that at all. Right. Okay. So the last infringement issue I have, and I believe this would answer your Honor's question, is threaded interior wall. The claim one, for example, if you read it, it has two limitations. Moveably coupled. The wrench is moveably coupled and it's mechanically connected. This is a unitary wrench that's claimed. When the claim is read as a whole, and our evidence, plaintiff's evidence, points to this, that at 328 and 331 of the appendix, the threaded wall that we're pointing to is interior. When you have this mechanical connection, that's moveably coupled. Defendant prevailed below by isolating the decoupled wrench. It has three main pieces. And defendant prevailed on the argument that it was an exterior wall, not interior. But this avoids, ignores the claim language, mechanically connected, moveably coupled. I'd like to save the remainder of time for rebuttal, unless the court has more questions. Just one thing. Where is the moveably coupled language in claim one? I see mechanically connected. Where's moveably coupled? Am I missing it? Yeah. It starts at the limitation, unadjustable jaw, moveably coupled to said shank. So below a fixed jaw, an adjustable jaw. Oh, here. Oh, up here. Yeah. Okay. Got it. Got it. Okay. Thanks. Thank you. All right. Mr. Helm. Thank you. I may please the court. I'm happy to go with whatever issue the court would like to direct me to. But in the absence of such direction, I'd like to start with the adjustment mechanism. That term was given a 112.6 construction by the court. That means there are special rules that apply to understanding the claim. And one of the terms that was in the construction was shack. So the argument here today was a gloss on the construction provided by the court. The plain and ordinary of the meaning of the term shack has to be assessed in the context of the patent. And that's particularly true with a 112.6 term. And that's exactly what the district court did when granting summary judgment. The court looked at the patent, looked at the claim term, and decided that the construction which required the shack to extend from the actuator wheel could not be met by a whole. It is a very straightforward determination. And the construction, the 112.6 construction is not challenged on this appeal. We think that that is the end of the story here. Because what they point to in their briefing is still a whole. We don't think in the context of this patent a shack means anything like an elevator shaft or a mining shaft. Do you want to briefly address the Martin question which your opponents spend so much time on? The Frohlo question? Absolutely. So Frohlo is very clear that there is no per se rule that marking creates infringement. That's the first part of Frohlo. The second part of Frohlo goes on and says there are instances in which marking might create a material issue that would preclude summary judgment. And in Frohlo, I think the facts are very, very different. I think there was a big corporation, we're a small corporation, that marked over the course of many years. And so there was at least an issue of fact from which you could infer that there might be some issue for the jury to determine. Well, and in fact, in the Frohlo case, isn't it correct that Wilson Sporting Goods actually had a license and had been paying royalties on the marked product for many, many, many years? For many, many years. And then they stopped paying royalties and the question was if they continued marking the same product. That's exactly right, Your Honor. And you are very well acquainted with the facts of Frohlo. And nothing like that is here. And in fact, we went through a few of the relevant facts that I think are in general undisputed. It's just the conclusions that you wish to draw from those facts. But the marking came from the appellant. The drawings were sent by the appellant. He sent them to Asia. Correct. That's undisputed. Not the company. I mean, the company in the sense that... Correct. But he was the true sponsor of sending them. That's exactly right. And that's what the judge determined in her decision. And then those were forwarded on. You can see that this is forward from the email of the drawings. So the company was relying on Asia. That's exactly right. I think it's, I don't know if it's Hebert or Hebert. I will go with Hebert. Maybe that's, I think that is correct. And so the bottom line is, is that throughout this whole process, which was not the extended process of Frohlo with a long history between the parties, the reliance was on Hebert to correctly mark. But why did your client mark? Well, it has to do with the actual relationship. So it started off as a distributor relationship where he produced the wrenches. And so he had control of the market. And then once he was brought on, once the quality of the wrenches was determined to be insufficient, and my client found a new manufacturer for those wrenches, he continued the process of marking the wrench. He was the one who supplied the drawings. He was the one who communicated. And that's what the declarations that we have in the record here show. There was no real involvement. Okay, so I have probably a dumb question. In fact, was it the case that the wrench design was changed during that time? Or was it always mismarked? You know, is the product being sold, there's a case of infringement here with the marking, the same relevant to the claim terms as the product that was previously sold? That's my understanding, is that the product has never changed. And I think the declaration that we have says that we didn't even realize that it was being marked with a patent number until the lawsuit was brought. But the company relied on ABAIR to believe that it was covered by the patent. Correct, that's exactly right. That's exactly right. I'll just address very, very briefly the helical issue. The problem, just like with the adjustment mechanism, where there's a hole which you can't extend from, the problem with the helical issue is that there's no collar, it's a solid shaft, and there's no helix. The thing that is pointed to as the allegedly infringing feature are grooves that don't run all the way around the exact piece. So we don't think that there's any way that you could ever possibly interpret that as a helix. Why does it have to have a helix? What about... It's the threaded limitation, Chief Judge Moore. Yes, I understand. Threaded interior wall, couldn't something be threaded one part of the interior wall, but not the entire interior wall, and still potentially meet the limitation? I think, I haven't thought about that specific question, but I think it's absolutely possible that you could have half of the wall be threaded. But that means half of the wall this way. It doesn't mean half the wall in a semicircular sort of way, because that does not actually be, that's not threaded. That's then just ridges. And so that we think that's a clear extinction. So it has to be threaded, like, such that a screw could... Correct, that's exactly, exactly. The same type of... And so if it was not threaded all the way around, you have some problems with that screw. It is not my field, but that is my understanding, is that even I have that understanding, is that if you don't go all the way around, you don't have a threaded, so. I had one final observation that I'm happy to see the rest of my time, unless the court has questions. And that's that this case almost certainly could have been submitted on the briefing. It's very, the brevity in the briefing is admirable in some ways, but I think that there's an issue that as briefed, there's no way to prevail on the case because of that 112.6 issue. It's everything, everything in the brief admits that there's no way to meet the extending from limitation. So it was really at the outset of this, we say in our briefing that this was a frivolous appeal. And at the outset of the appeal, we did flag that for the appellate. So with that, unless there are any questions, I'll see the rest of my time. Two quick points. First of all, on the shaft construction, it remains the same that the district court construed shaft to mean ordinary meaning. Let me, let me move on what you said. I care more about with respect to what the district court's determination. How, how is a solid set? How is a solid cylinder a collar? I think if your honor looks at claim eight, take you. Claim eight explicitly claims that type of a collar, your honor. And if, if your honor would go down to the, I'm asking for the recessed wrench. Okay. Yes. And, and I think this would read on the recessed wrench, a smooth collar comprising a tubular member. And this would be the, in, in the recessed wrench, this would be the adjustable jaw that is movably coupled to the primary piece, which is the fixed jaw. And so at appendix 328, you would see these tubular threaded collars, which are movably coupled and connect with the primary piece. You can see this at appendix 330, the movable coupling of this tubular member. And then just finally, on the Frollo case, Chief Judge Moore referenced that royalties had been paid by Wilson in that case. Here too, Allied was paying royalties to Hebert. And that's at paragraph 38 of his expert report. I didn't hear you say anything in response to, may I ask another question? Yes. To counsel's contention that we can stop just with respect to the means plus function analysis in this case. If you want to say anything in response to that. Thank you, Your Honor. The claim construction order doesn't contain the argument made. There's simply no time of that 112 paragraph six construction to shaft. So this is post hoc argument by counsel. The record is that we had the claim construction order. Mr. Hebert prepared his evidence according to it. And then things changed when Allied re-litigated at summary judgment. Okay, so just so I understand for clarity, are you saying it's not a 112 six limitation? Well, that's where I took what you just said. Oh, no, no, no. We're talking about two different terms. So the court held that the adjustment mechanism was section 112 paragraph six. And it provided a construction relative to that. And that goes to the summary judgment grant here. That is all true. But a separate issue is how do we construe shaft? Can shaft mean an absence, a passageway, a duct? Hebert prepared his evidence, meaning that, yes, that broadly fits the ordinary meaning of shaft. And so in his expert report, he points to the hollow center of the actual reason. A conclusory statement that he thought that.  On the claim construction order, Your Honor. No, I'm saying he was acting as an expert, is my understanding. And when he made that conclusory statement that you just said to us, what did he say to support that opinion? Being the inventor, manufacturing these wrenches. Those two things, Your Honor. Okay. Okay, I thank both counsel. This case is taken under substantial.